UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HIGGINBOTHAM, and MARCELINO DECIERDO,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTH EAST EMPLOYEE LEASING SERVICES, INC, and SOUTH EAST PERSONNEL LEASING SERVICES, INC.,<br><br>Defendants. | No.  2:20-cv-00575-KJM-DB<br><br>ORDER |

Plaintiffs Michael Higginbotham and Marcelino Decierdo ("plaintiffs") move to remand this action to San Joaquin County Superior Court. Mot., ECF No. 10. Defendants South East Employee Leasing Services, Inc. and South East Personnel Leasing Services, Inc. oppose the motion. Opp'n, ECF No. 11. Plaintiffs replied. Reply. ECF No. 14.

The court submitted the motion on the papers. Having reviewed the notice of removal, the complaint, the moving papers, and the applicable law, the court GRANTS the motion.

I.  BACKGROUND

This representative action under California's Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.*, arises from plaintiffs' employment by defendants as

1

non-exempt security guards. Removal Not., ECF No. 1 at 17 (Compl.).[1]  Plaintiffs sue defendants on behalf of themselves and all similarly aggrieved employees for various violations of the California Labor Code. *Id.*  Specifically, plaintiffs allege defendants failed to (1) timely pay wages, (2) provide rest and meal breaks, (3) maintain employment records, (4) pay all wages owed, (5) provide accurate wage statements, and (6) pay all wages owed on separation. *Id.*

After plaintiffs filed this action in San Joaquin County Superior Court, defendants removed to federal court, arguing this court has diversity jurisdiction. *Id.* at 2.  Defendants allege plaintiffs are California citizens based on a review of their records of employment. Clark Decl., ECF No. 1-1 ¶ 7.  Defendants assert they are citizens of Florida, because they are incorporated under Florida's laws and their principal place of business is there. Removal Not. at 5–6.

Defendants calculate the total amount of PAGA penalties recoverable by all similarly situated employees for plaintiffs' action will exceed the $75,000 jurisdictional minimum. *Id.* at 10.  To reach this number, defendants assume plaintiffs and similarly situated employees "collectively worked significantly more than 750 pay periods." *Id.*  Assuming one pre-notice "initial violation" penalty for rest and meal break violations for each shift, defendants calculate these penalties alone at $150,000.[2] *Id.*  Furthermore, defendants estimate the attorneys' fees at stake in a PAGA action, as provided by California Labor Code § 2699(g), could exceed $75,000 just on their own. *Id.* at 11 (assuming $400 per hour rate and asserting case taken through trial could exceed the 187.5 hours necessary to exceed limit at that rate).

Plaintiffs move to remand, arguing the dispute does not meet the amount in controversy minimum because defendants improperly aggregate the penalties attributable to all aggrieved employees. Mot. at 1.  Plaintiffs assert the total civil penalties attributable to them individually are, at most, $2,000 for Higginbotham and $1,250 for Decierdo. Mot. at 2.  They argue these are subject to further reduction by deducting the 75 percent share owed the Labor and

---

[1] References to the complaint, which is incorporated in the same document as the notice of removal beginning at page thirteen, are to the ECF pagination in the overall document.

[2] Defendants' notice of removal assumes 750 rest break violations and 750 meal break violations, both arising under California Labor Code § 226.7 as "initial violations" with a $100 penalty attached per violation.

Workforce Development Agency ("LWDA").  *Id.*  Plaintiffs also argue defendants have not met their burden of establishing complete diversity of citizenship.  Mot. at 10–11.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1332(a)(1), a district court has jurisdiction over a civil action where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.  Under 28 U.S.C. § 1441(a), a defendant may remove an action to a federal district court that would have had "original jurisdiction" over the action had it been filed there.

Where a complaint does not specify the amount of damages and the plaintiff challenges jurisdiction after removal, the removing defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional requirement.  *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996).  A district court may require, and may consider, "summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F. 3d 373, 377 (9th Cir. 1997) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)).  There is a "strong presumption" against removal and the court therefore "strictly construe[s] the removal statute against removal jurisdiction."  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

## III. DISCUSSION

Plaintiffs argue the court's calculation of the amount in controversy is directly controlled by *Urbino v. Orkin Servs. of Calif.*, 726 F.3d 1118 (9th Cir. 2013).  They argue under *Urbino* defendants cannot meet their burden to show by a preponderance of the evidence that the amount in controversy requirement is met.  The court agrees.  Because defendants do not meet the amount in controversy requirement, the court need not address plaintiffs' arguments about the citizenship of the parties.

### a. Aggregation of PAGA Claims

In *Urbino*, an employee brought a representative PAGA claim in state court.  *Id.* at 1121.  The defendants removed to federal court, asserting the claims at issue were common to 811 employees and at least 17,182 paychecks.  *Id.*  Defendants' total exposure to statutory

3

penalties from all employees' claims was almost $9.5 million, while their exposure to statutory penalties from the named plaintiff's claim alone was only $11,602.40. *Id.*

The Ninth Circuit panel addressed whether courts should consider the amount at stake in representative PAGA claims in aggregate for purposes of diversity jurisdiction. "The traditional rule is that multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to satisfy the amount in controversy requirement." *Id.* at 1122 (citation omitted). Claims may be aggregated when individuals "unite to enforce a single title or right in which they have a common and undivided interest." *Id.* (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969)). A common and undivided interest exists where the defendants "owe[] an obligation to the group of plaintiffs as a group and not to the individuals severally." *Id.* (quoting *Gibson v. Chrysler Corp.*, 261 F.3d 927, 944 (9th Cir. 2001) (citation omitted)). The court in *Urbino* held that the rights afforded by the California Labor Code are held by individual employees, not as a group. *Id.* Thus, removing defendants may not aggregate representative claims under PAGA with the claims of the similarly situated aggrieved employees for purposes of calculating the amount in controversy. *Id.*

Defendants assert *Urbino* no longer applies, because more recent cases have held plaintiffs may not sever PAGA claims and settle them individually. Opp'n at 3 (citing *Kim v. Reins*, 9 Cal. 5th 73 (2020); *Khan v. Dunn-Edwards Corp*., 19 Cal. App. 5th 804 (2018)). Broadly speaking, both cases defendants cite address the role of individual employees vis-à-vis similarly situated employees in the PAGA context. In *Kim*, the California Supreme Court held the settlement of an individual employee's PAGA claim does not strip the employee of standing to pursue PAGA claims on behalf of the state thereafter. *Kim*, 9 Cal. 5th at 80. In *Khan*, a California appellate court held an individual employee who failed to provide his former employer and the LWDA with notice that he was acting as a representative of similarly situated employees could not prevail on a PAGA claim. *Khan*, 19 Cal. App. 5th at 809.

Defendants suggest these holdings cabin or even abrogate *Urbino*. Even assuming without deciding that these California cases, which are silent as to the federal amount in controversy requirement, could somehow modify *Urbino*, they do not recast PAGA claims from

4

multiple employees as enforcing "a single title or right" in which the employees have "a common and undivided interest." *Urbino*, 726 F.3d at 1122. At most, they reaffirm the interconnectedness of the individual claims arising from the severally-owed duties of employers to employees in the PAGA context.

From their initial faulty premise, defendants go on to characterize plaintiffs' citations following *Urbino* as "hing[ing] on the same debunked premise as *Urbino*." Opp'n at 3–4. But *Urbino* remains good law, as this court has recognized in *Moberly v. FedEx Corp.*, No. 2:18-cv-00393-KJM-AC, 2019 WL 927295, at *2–3 (E.D. Cal. Feb. 26, 2019), and the Ninth Circuit has as well, more recently, in *Canela v. Costco Wholesale Corp.*, No. 18-16592, 2020 WL 4920949, at *3 (9th Cir. 2020).

In sum, the amount in controversy is governed by the amount of statutory penalties recoverable by the named plaintiffs, not the aggregation of all penalties.

b. Share of Penalties

Under PAGA, 25 percent of any civil penalties is distributed to the aggrieved employees and the remaining 75 percent is allocated to the LWDA. Cal. Lab. Code § 2699(i). In the absence of circuit authority, district courts in this circuit have split on the question whether the amount in controversy calculation must take account of the LWDA's 75 percent. This court has opted to exclude the LWDA's 75 percent share of civil penalties from the calculation. *See Moberly*, 2019 WL 927295, at *3 (collecting cases). This is because the LWDA is only a real party in interest, not a party to the suit and "courts must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of the real parties to the controversy." *Urbino*, 726 F. 3d at 1122–23 (internal quotation marks and citation omitted). Seeing no reason to depart from its prior determination of the issue, the court finds defendants must establish that plaintiffs' 25 percent share alone satisfies the amount in controversy requirement.

c. Attorneys' Fees

Finally, defendants assert plaintiffs will exceed the jurisdictional minimum with the likely number of attorney hours expended in litigating the case through an anticipated summary judgment motion and possible trial. Removal Not. at 11. Defendants attach no

1  evidence to their notice of removal or their opposition to the motion in support of their
2  speculative math, assuming "that Plaintiffs' counsel charges $400 per hour it would only take
3  187.5 hours of work to meet the amount in controversy requirement.  The number of hours to
4  litigate a case through trial could far exceed that amount." *Id.*

5  Future attorneys' fees are part of determining the amount in controversy if a
6  contract or statute entitles the plaintiff to them.  *Fritsch v. Swift Trans. Co. of Ariz., LLC*,
7  899 F.3d 785, 788 (9th Cir. 2018).  In PAGA actions, only the named plaintiff-employees' pro
8  rata share of attorneys' fees is considered.  *Canela*, 2020 WL 4920949, at *4 ; *see also Arrellano*
9  *v. Optum Med. Grp.*, No. CV 18-6093-DMG (ASX), 2019 WL 247220, at *4 (C.D. Cal. Jan 17,
10  2019) (citing *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1049 (N.D. Cal. 2014)) ("But,
11  in PAGA cases, that amount must be reduced to reflect only Plaintiff's *pro rata* share of those
12  fees.").  The defendant bears the burden of establishing the amount of future attorneys' fees by a
13  preponderance of the evidence.  *Fritsch*, 899 F.3d at 788.

14  Setting aside plaintiffs' proposed calculation of a pro-rata share of attorneys' fees
15  based on defendants' assumption, *see* Mot. at 9 (concluding each plaintiff receives one half-hour
16  of proposed 187.5 attorney hours based on proportion of pay periods at issue), the defendants
17  have not met their burden.  Defendants advance no evidence to support their hypothetical number
18  of attorney hours.  Despite attaching a declaration of counsel to their notice of removal in which
19  counsel opines on the substantive penalties at issue in the suit, *see* Deitz Decl., ECF No. 1–2,
20  defense counsel offers no concrete information from his experience litigating these types of cases
21  to support the attorneys' fees argument.  Therefore, defendants have not met their burden to
22  demonstrate any amount of future attorneys' fees to factor into the amount in controversy.

23  d. Calculation of Amount in Controversy

24  In light of the foregoing, the court calculates the amount in controversy for each
25  named plaintiff.

26  Plaintiffs allege, and defendants do not contest, that defendants employed Michael
27  Higginbotham from November 1, 2018 to November 30, 2018, or two biweekly pay periods.
28  Mot. at 5–6; *see also* Compl. ¶ 4.  Plaintiffs allege, and defendants do not contest, that defendants

6

employed Marcelino Decierdo from November 1, 2018 to November 12, 2018.  Mot. at 6; Compl. ¶ 4.  Under the Labor Code, civil penalties are assessed on a per-employee, per-pay-period basis.  Cal. Lab. Code § 2699(f)(2).  Several penalties increase depending on whether they are for an initial violation or subsequent violation.  *Id.* (making otherwise un-enumerated penalties $100 for initial violations and $200 for subsequent violations.).

For purposes of the motion only, the court assumes the higher subsequent violation amount applies in each instance, and that for Higginbotham, all alleged violations occurred in both pay periods worked.  Plaintiffs allege failure to pay wages when due (Cal. Lab. Code §§ 204, 210 ($200)), failure to provide wage statements (Cal. Lab. Code §§ 226(a), 226.3 ($1,000)), underpayment of wages (Cal. Lab. Code § 558 ($100)), failure to maintain accurate employment records (Cal Lab. Code §§ 1174(d), 1174.5 ($500 once)), failure to pay minimum wages (Cal. Lab. Code § 1197.1 ($250)), failure to pay all wages at termination (Cal. Lab. Code §§ 201, 202 ($200)), failure to pay waiting time penalties (Cal. Lab. Code § 203 ($200)), failure to provide rest and meal periods (Cal. Lab. Code § 226.7 ($200)), and failure to pay overtime (Cal. Lab. Code § 1198 ($200)).

The court thus calculates the maximum civil penalties within each pay period to be $2,350, plus a one-time civil penalty of $500 for failure to maintain accurate employment records under sections 1174(d) and 1174.5, for a total of $2,850.  For Higginbotham, who worked two pay periods, this number doubles to $4,700 plus the $500 recordkeeping penalty, totaling $5,200.  All civil penalties at stake taking account of both Higginbotham and Decierdo are $8,050.  As discussed above, the LWDA's 75 percent share of this is not included in the ultimate amount in controversy calculation, so the amount is reduced to the 25 percent pro rata share of the plaintiffs, or $2,012.50.

Finally, although defendants have not met their burden of showing the future attorneys' fees, litigation of course is not free.  Because attorneys' fees are reduced to the pro-rata share attributable to the named plaintiffs, *see Canela*, 2020 WL 4920949, at *4, the court adopts plaintiffs' proposed method of calculation.  Plaintiffs assert they are entitled to attorneys' fees in proportion to their share of total pay periods at issue.  Mot. at 9.  Because Higginbotham and

1 Decierdo worked three pay periods between them and defendants claim the number of pay

2 periods at issue is "over 750," Removal Not. at 10, the plaintiffs' share is approximately 1/250 of

3 the total attorneys' fees at issue.  With this proportion, plaintiffs' share of attorneys' fees could

4 not reasonably combine with their share of the civil penalties to reach the amount in controversy

5 requirement.

6     Therefore, under the law as announced in *Urbino*, the amount in controversy

7 amount is not met.

8     e. Attorneys' Fees on the Motion to Remand

9     When remanding a removed case, the court may award "just costs and any actual

10 expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).

11 Absent unusual circumstances, attorney's fees should not be awarded when the removing party

12 has an objectively reasonable basis for removal.  *Martin v. Franklin Capital Corp.*, 546 U.S. 132,

13 136 (2005).  The purpose of the fee-shifting provision under § 1447 is to "deter removals sought

14 for the purpose of prolonging litigation and imposing costs on the opposing party, while not

15 undermining Congress' basic decision to afford defendants a right to remove as a general matter,

16 when the statutory criteria are satisfied."  *Id.* at 140.

17     While defendant's argument that removal was proper is frivolous in light of on-

18 point, controlling authority, plaintiffs did not request an award of fees and costs in bringing this

19 motion.  Although *Martin* counsels that "where no objectively reasonable basis exists, fees should

20 be awarded," *id.* at 132, the court declines to do so *sua sponte* in its discretion.

21     IV. CONCLUSION

22     For the foregoing reasons, and because no other ground for federal jurisdiction

23 appears on the face of the complaint, the court GRANTS plaintiffs' motion to remand.  This case

24 is hereby REMANDED to San Joaquin County Superior Court for all further proceedings.  The

25 court ORDERS the clerk of court to mail a certified copy of this order to the clerk of San Joaquin

26 /////

27 /////

28 /////

1  County Superior Court.  All existing hearing dates are VACATED and the clerk is directed to
2  close the case.
3         IT IS SO ORDERED.
4  DATED: September 15, 2020.

                        CHIEF UNITED STATES DISTRICT JUDGE